UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RYAN CASTANEIRA,

    *Plaintiff,*

v.

ALEJANDRO MAYORKAS,
**Secretary of Homeland Security,**
*et al.,*

    *Defendants.*

Case No. 1:22-cv-01485-RCL

## MEMORANDUM OPINION

Plaintiff Ryan Castaneira, *pro se*, brings this action to challenge the United States Citizenship and Immigration Services's ("USCIS") and Department of Homeland Security's ("DHS") (collectively, "defendants") denial of his Form I-130, Petition for Alien Relative ("I-130" or "petition"), filed on behalf of his Mexican national wife. *See* Am. Compl., ECF No. 15. Castaneira seeks, among other remedies, declaratory and injunctive relief that sets aside the decision by USCIS to deny his petition, *see* Decision Denying Petition ("Denial"), ECF No. 15-6, and declares that the Adam Walsh Child Safety and Protection Act of 2006 ("AWA"), Pub. L. No. 109-248, 120 Stat. 587, does not apply to his I-130 proceedings; or, if the AWA does apply, compels defendants to review his petition under a "preponderance of the evidence" standard instead of a "beyond any reasonable doubt" standard. Am. Compl., Prayer for Relief ¶¶ a–l.

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Defs.' Mot. to Dismiss Am. Compl., ECF No. 18. Upon consideration of the parties' filings, the applicable law, and the facts of the case, the Court agrees with defendants and

1

concludes that it has no jurisdiction to review Castaneira's challenges to USCIS's determination and that Castaneira has failed to state a plausible claim that the AWA does not apply to his proceedings. Accordingly, defendants' motion to dismiss will be **GRANTED**.

## I. BACKGROUND

### A. Statutory and Regulatory Background

Immediate relatives of U.S. citizens, including spouses and children, receive certain preferential treatment under the Immigration and Nationality Act ("INA"). *See, e.g.*, 8 U.S.C. § 1151(b)(2)(A)(i) (providing that immigration of immediate relatives is not subject to numerical limitations). As relevant here, a U.S. citizen may file a Form I-130 petition with USCIS to classify the petitioner's foreign national spouse or child as an immediate relative to allow the beneficiary to immigrate to the United States. *See* 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. §§ 204.1(a)(1), 204.2.

In 2006, Congress passed the AWA, which, among other things, amended the INA to provide that USCIS must deny a U.S. citizen's Form I-130 petition if the petitioner "has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk" to the petitioner's beneficiary. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). Congress has authorized USCIS by statute to make such determinations for the Secretary. *See* 6 U.S.C. § 271(b)(1). The provision of the AWA governing those determinations cross-references another statutory provision for its definition of "specified offense against a minor," which includes the following:

> (A) An offense (unless committed by a parent or guardian) involving kidnapping.
>
> (B) An offense (unless committed by a parent or guardian) involving false imprisonment.
>
> (C) Solicitation to engage in sexual conduct.
>
> (D) Use in a sexual performance.

> (E) Solicitation to practice prostitution.
>
> (F) Video voyeurism as described in section 1801 of Title 18.
>
> (G) Possession, production, or distribution of child pornography.
>
> (H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.
>
> (I) Any conduct that by its nature is a sex offense against a minor.

34 U.S.C. § 20911(7); *see* 8 U.S.C. § 1154(a)(1)(A)(viii)(II). If a petitioner with a conviction involving any such offenses seeks classification of his foreign national spouse or child, USCIS must determine that the petitioner poses "no risk" to the beneficiary in order to approve the petition. 8 U.S.C. § 1154(a)(1)(A)(viii)(I).

**B. Factual and Procedural Background**

Castaneira is a U.S. citizen residing in Harrisburg, Pennsylvania. Am. Compl. ¶ 2. On September 20, 2006, Castaneira was arrested in Georgia and charged with "Computer or Electronic Pornography, Computer Child Exploitation, and Driving While License Suspended or Revoked." *See* Not. of Intent to Deny ("NOID") at 2, ECF No. 15-1. The arrest "stemm[ed] from a 2006 internet exchange on an adult-only website with" an individual whom Castaneira "believed not to have attained the age of majority" but who was in fact an adult "undercover police officer." Am. Compl. ¶ 2. Subsequently, Castaneira was convicted of violating O.C.G.A. §§ 16-12-100.2(c)(1) (Computer or Electronic Pornography), 16-12-100.2(d)(1) (Computer Child Exploitation), and 16-4-1 (Criminal Attempt to Commit a Felony). NOID at 2. He was sentenced to ten years confinement, probation, and a fine, and he was required to register as a sex offender. *Id.*

In 2018, Castaneira married a Mexican national, Magdalena Perez Resendiz. Am. Compl. ¶ 2; NOID at 1. A year later, on August 19, 2019, Castaneira filed a Form I-130 for adjustment of his wife's status pursuant to 8 U.S.C. § 1151(b). Am. Compl. ¶ 3. USCIS replied to Castaneira on

March 8, 2022 with a notice of its intent to deny ("NOID") his petition. *See* NOID. USCIS concluded that Castaneira's Georgia convictions qualified as "specified offense[s] against a minor" under the AWA, and thus Castaneira was likely ineligible to proceed with his Form I-130 petition. *Id.* at 2–3 (citing 8 U.S.C. §§ 1154(a)(l)(A)(viii)).

The NOID described the process for showing that Castaneira's case did not fall under the AWA and, if the AWA applied, the process for showing that he presented "no risk" of harm to his wife, as well as the types of evidence to submit to support his claim. *Id.* at 3–6. It also stated that Castaneira bore the burden of establishing "beyond any reasonable doubt" that he posed no risk to the safety and well-being of his wife. *Id.* at 4. Finally, the NOID stated that a decision would not be reached for 87 days, during which time he would be permitted to submit evidence to overcome the reasons for denial. *Id.* at 6.

On May 26, 2022, Castaneira filed his initial *pro se* Complaint in this Court to contest the evidentiary standards applied to adjudicate his Form I-130 petition and for a judgment declaring the AWA inapplicable to his convictions. *See* Compl., ECF No. 1. Subsequently, on June 13, 2022, Castaneira sent USCIS a response to the NOID with facts and evidence surrounding the nature and circumstances of his convictions. *See* Denial at 2. On August 24, 2022, with a final decision on the petition still pending, defendants moved to dismiss the initial Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. ECF No. 6. Castaneira opposed the motion, ECF No. 9, and defendants filed a reply, ECF No. 10.

On November 10, 2022, USCIS formally denied Castaneira's petition. *See* Denial at 5. USCIS determined that Castaneira was ineligible to file the petition due to his prior convictions, reasoning that the evidence submitted did not prove his past crimes were not a "specified offense

4

against a minor" as defined by the AWA, nor did it establish, beyond any reasonable doubt, that Castaneira posed no risk to the safety and well-being of his wife. *Id.* at 1–5. Defendants notified the Court about the agency's decision on the same day it was issued, *see* Defs.' Not. of Agency Decision, ECF No. 11, and Castaneira then sought leave to amend the Complaint, *see* Pl.'s Mots. to Amend, ECF Nos. 12 & 14. The Court granted Castaneira leave to amend his initial Complaint on November 22, 2022, *see* Minute Order (Nov. 22, 2022), and the Amended Complaint was docketed the following day, *see* Am. Compl.

Castaneira asserts five claims in the Amended Complaint:

1. That defendants failed to either follow or overrule USCIS's precedential decision in *Matter of Chawathe*, 25 I. & N. Dec. 369 (USCIS AAO 2010), and therefore violated the requirement that an agency follow its own regulations in making discretionary decisions, *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), Am. Compl. ¶¶ 60–64;

2. That defendants wrongfully applied a beyond any reasonable doubt standard rather than a preponderance of the evidence standard, in violation of *Chawathe*, Am. Compl. ¶¶ 65–68;

3. That Castaneira's convictions do not qualify as "specified offense[s] against a minor" as defined by 34 U.S.C. § 20911(7) and, consequently, the AWA does not apply to his case, Am. Compl. ¶¶ 69–73;

4. That the law is uncertain regarding the definitions of certain terms USCIS uses in reaching its "no risk" determination, Am. Compl. ¶¶ 74–78; and

5. That defendants' decision denying his petition violated the Administrative Procedure Act ("APA") because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(a), Am. Compl. ¶¶ 79–85.

On January 23, 2023, defendants filed a motion to dismiss Castaneira's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mot. to Dismiss Am. Compl. Castaneira filed an opposition, *see* Pl.'s Opp'n to Mot. to Dismiss Am. Compl., ECF No. 22, defendants filed a reply, *see* Defs.' Reply in Supp. of Mot. to Dismiss Am. Compl., ECF

5

No. 26, and with the Court's leave, *see* Order, ECF No. 29, Castaneira filed a surreply, *see* Pl.'s Surreply in Opp'n to Mot. to Dismiss Am. Compl., ECF No. 31. The motion is now ripe for review.

## II.   LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

A defendant in a civil action may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction." A court considering such a motion must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020). "However, those factual allegations receive closer scrutiny than they do in the Rule 12(b)(6) context," and the court "may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim." *Id.* (internal quotation marks and citations omitted). It is the "[p]laintiff [who] bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

### B. Federal Rule of Civil Procedure 12(b)(6)

A defendant in a civil action may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them

liberally in the plaintiff's favor." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018). However, "[a] court need not accept a plaintiff's legal conclusions as true, . . . nor must a court presume the veracity of legal conclusions that are couched as factual allegations." *Id.* (citation omitted).

### C. Filings by *Pro Se* Parties

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). "However, even though a *pro se* complaint must be liberally construed, the complaint must nonetheless present a claim on which the court can grant relief." *Williams v. Bank of New York Mellon*, 169 F. Supp. 3d 119, 124 (D.D.C. 2016) (internal quotation marks and citation omitted). That is, a pro se plaintiff is not exempt from the requirements of the federal rules. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009).

### III. DISCUSSION

Defendants' motion asks the Court to dismiss Castaneira's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a plausible claim. Defs.' Mot. to Dismiss Am. Compl. at 2. For the reasons that follow, the Court will dismiss the Amended Complaint in full. Specifically, the Court will dismiss Castaneira's first, second, fourth, and fifth claims for lack of subject-matter jurisdiction and his third claim for failure to state a claim upon which relief can be granted.[1]

---

[1] Castaneira's surreply raises two new arguments: that the government's execerise of delegated power to interpret the phrase "sole and unreviewable discretion" violates the non-delegation doctrine, *see* Pl.'s Surreply in Opp'n to Mot. to Dismiss Am. Compl. at 2–8, and contradicts statutory text enacted prior to the AWA, *see id.* at 8–10. However, because Castaneira waited until his surreply brief to raise those challenges, the government has had no chance to respond. Courts will generally not consider arguments raised for the first time in a reply brief. *See Battle v. Rubin*, 121 F. Supp. 2d 4, 7 n.3 (D.D.C. 2000). Consequently, the Court will not entertain these two new arguments.

### A. The Court Lacks Subject-Matter Jurisdiction to Review USCIS's "No Risk" Determination

Defendants move to dismiss Castaneira's first, second, fourth, and fifth claims, all of which challenge the manner in which USCIS made its "no risk" determination in his case, on grounds that the Court lacks subject-matter jurisdiction to review such determinations. See Defs.' Mot. to Dismiss Am. Compl. at 12–23. Castaneira maintains that the Court has subject-matter jurisdiction to hear those claims pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1361 (mandamus), 2201 *et seq.* (declaratory relief), and 1651 (the All Writs Act). Am. Compl. ¶ 13.

Defendants argue that no jurisdiction exists to review the first, second, fourth, and fifth claims because (1) Congress stated in explicit statutory language that the process and outcome of the "no risk" determination are exercises of USCIS's unreviewable discretion, Defs.' Mot. to Dismiss. Am. Compl. at 12–15; (2) the APA, INA, and AWA preclude federal courts from examining the standard of proof that USCIS applies in cases subject to the AWA, *id.* at 15–21; and (3) there is no other source of jurisdiction available, *id.* at 21–23. Castaneira counters that even if USCIS's ultimate "no risk" determination is shielded from review by statute, its policies and procedures for reaching that decision are not, Pl.'s Opp'n to Defs.' Mot. to Dismiss Am. Compl. at 10–14, and, more specifically, that Congress intended the term "determination" in the relevant provision of the AWA to relate only to a final risk assessment and not the evidentiary standard used to make that assessment, *id.* at 14–19. Defendants nevertheless reiterate that the language Congress used, "sole and unreviewable discretion," 8 U.S.C. § 1154(a)(1)(A)(viii)(I), plainly precludes judicial review over both the process and outcome of a "no risk" determination. Defs.' Reply in Supp. of Mot. to Dismiss Am. Compl. at 1–4. This Court agrees with defendants.

Pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), and subject to certain exceptions not at issue here, courts lack jurisdiction to review "any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [8 U.S.C., ch. 12, subch. 2] to be in the discretion of the Attorney General or the Secretary of Homeland Security." "[T]he key to § 1252(a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be specified by statute, and [] whether such a specification has been made is determined by examining the statute as a whole." *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 200 (3d Cir. 2006) (internal quotation marks and citation omitted). Likewise, the APA precludes judicial review of "agency action [] committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Accordingly, the Court's task in a case like this is to determine whether the relevant immigration statute makes the determination at issue discretionary and thus outside the Court's jurisdiction to review.

The relevant statutory provision in this case, 8 U.S.C. § 1154(a)(1)(A)(viii)(I), grants "the Secretary of Homeland Security . . . sole and unreviewable discretion [to] determine[]" whether a Form I-130 petitioner "convicted of a specified offense against a minor" has established that he presents "no risk" to the intended alien beneficiary. Congress's grant of discretionary authority could not be much clearer. And for that reason, although the D.C. Circuit has not yet confronted the question, every court of appeals to do so has held that § 1154(a)(1)(A)(viii), read in conjunction with § 1252(a)(2)(B)(ii), places "no risk" determinations beyond the jurisdiction of courts to review. *See Bourdon v. U.S. Dep't of Homeland Security*, 940 F.3d 537, 542–49 (11th Cir. 2019); *Bakran v. Sec'y, Dep't of Homeland Security*, 894 F.3d 557, 562 (3d Cir. 2018); *Gebhardt v. Nielsen*, 879 F.3d 980, 984–85 (9th Cir. 2018); *Privett v. Sec'y, Dep't of Homeland Security*, 865 F.3d 375, 378–82 (6th Cir. 2017); *Roland v. U.S. Citizenship & Immigr. Servs.*,

850 F.3d 625, 629–30 (4th Cir. 2017); *Bremer v. Johnson*, 834 F.3d 925, 929–31 (8th Cir. 2016). This Court agrees.

While Castaneira acknowledges that the ultimate "no risk" determination is unreviewable, he insists that courts may review the evidentiary standard used in making that determination. *See* Pl.'s Opp'n to Mot. to Dismiss Am. Compl. at 11–13. That argument is without merit. As several other courts have held, "[a]pplication of the 'no risk' standard [] solely vests in USCIS's authority," and that includes the selection of an evidentiary standard. *See Bourdon*, 940 F.3d at 545–49; *Gebhardt*, 879 F.3d at 987; *Bremer*, 834 F.3d at 930; *Struniak v. Lynch*, 159 F. Supp. 3d 643, 655 (E.D. Va. 2016); *Bakran*, 894 F.3d at 563; *see also Safadi v. Howard*, 466 F. Supp. 2d 696, 699–700 (E.D. Va. 2006) (holding that where a statute does not impose limits on discretionary authority, the entire adjudication process is precluded from judicial review under § 1252(a)(2)(B)(ii)).

In other words, the Court lacks jurisdiction to question defendants' application of the "beyond any reasonable doubt" standard, even where the challenge does not purport to be one to the agency's final "no risk" determination, because the burden of proof is a necessary factor in reaching that final determination. USCIS may not grant a Form I-130 petition unless USCIS determines that the petitioner poses "no risk" to the intended beneficiary. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). The "beyond any reasonable doubt" standard is the means by which USCIS determines whether the "no risk" requirement is met, a determination made under § 1154(a)(1)(A)(viii)(I). It therefore falls under the jurisdiction-limiting provision of § 1252(a)(2)(B)(ii). *See Bakran*, 894 F.3d at 563.

Castaneira argues that the authorities holding that the unreviewability of "no risk" determinations extends to the evidentiary standard were wrongly decided because they failed to

10

address the import of the USCIS Administrative Appeals Office's precedential decision in *Chawathe*, which held that, "[e]xcept where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought." 25 I. & N. Dec. at 375. He argues that *Chawathe* binds defendants under the *Accardi* doctrine, which holds that courts may review an agency's failure to follow its own regulations in making a discretionary decision. Pl.'s Opp'n at 14–22; *see Accardi*, 347 U.S. at 267–68; *Service v. Dulles*, 354 U.S. 363, 372–73 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959). The Court disagrees.

As the Eleventh Circuit noted in *Bourdon*, none of the *Accardi* line of cases involved a statutory grant of authority including the word "unreviewable." *Bourdon*, 940 F.3d at 549; *see Accardi*, 347 U.S. at 262–63 ("the Attorney General may suspend deportation of such alien" on certain enumerated grounds); *Service*, 354 U.S. at 370 ("the Secretary of State may, in his absolute discretion, terminate the employment of any officer or employee of the Department of State or of the Foreign Service of the United States whenever he shall deem such termination necessary or advisable in the interests of the United States"); *Vitarelli*, 359 U.S. at 538–39 (no specific grant of statutory authority governing Secretary's authority to terminate certain class of employee).[2] And that is an important omission. "Supreme Court cases reviewing the discretion of Executive Branch officials cannot guide [the Court] in cases, like this one, where [the courts] are told by Congress not to review that discretion in the first place." *Bourdon*, 940 F.3d at 549.

---

[2] The same is true of two of the three primary cases in which Castaneira asserts other courts in this district have accepted "[a]nalogous" arguments in other statutory contexts. Pl.'s Opp'n to Mot. to Dismiss Am. Compl. at 23–25; *see Damus v. Nielsen*, 313 F. Supp. 3d 317, 323–24, 326–28 (D.D.C. 2018) (finding no jurisdictional bar to *Accardi* review where statute granted authority to "[t]he Attorney General . . . in his discretion," 8 U.S.C. § 1182(d)(5)(A)); *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 120–21 (D.D.C. 2020) (stating the uncontroversial proposition that the APA itself does not bar *Accardi* review). The third case did not involve a statutory bar to jurisdiction at all. *See generally Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health and Human Servs.*, 485 F. Supp. 3d 1 (D.D.C. 2020).

This Court therefore agrees with other courts' interpretation of 8 U.S.C. § 1154(a)(1)(A)(viii)(I): the phrase "sole and unreviewable discretion" means precisely what it says.

To be clear, nothing in this Memorandum Opinion should be read as expressing any view on the merits of USCIS's decision to apply a beyond any reasonable doubt standard in making "no risk" determinations under the AWA in spite of the rule laid out in *Chawathe*. But even if USCIS disregarded its own binding precedent and thereby acted unlawfully, it does not follow that this Court has the power to afford Castaneira any sort of remedy—at least not where Congress has deprived the courts of such power by statute. That conclusion should come as no surprise. After all, Congress under the Constitution has plenary power over immigration, *see Kleindienst v. Mandel*, 408 U.S. 753, 765–66 (1972), so is it within the bounds of Congress's authority to exclude "no risk" determinations from the jurisdiction of courts to review.[3]

Accordingly, all of Castaneira's four claims that challenge USCIS's discretionary "no risk" determination and consequent denial of the I-130 fall within the scope of § 1252(a)(2)(B)'s bar on judicial review.

Finally, Castaneira argues that other bases of federal jurisdiction exist to sustain his claims, specifically "28 U.S.C. § 1361 (mandamus); 28 U.S.C § 2201, *et seq.* (declaratory relief); and 28 U.S.C. § 1651 (All Writs Act)." Am. Compl. ¶13. The Court again disagrees.

The Declaratory Judgment Act allows the Court "to declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201, but it "is not an independent source of federal jurisdiction," *C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (internal quotation marks and citation omitted).

---

[3] Indeed, the Ninth Circuit has read the phrase "sole and unreviewable discretion" to suggest that Congress intended to prohibit courts from reviewing even *constitutional* claims concerning "no risk" determinations, although it ultimately assumed without deciding that such claims were reviewable. *See Gebhardt*, 879 F. 3d at 987–88.

"Rather, the statute merely creates a remedy in cases otherwise within the Court's jurisdiction." *Hassan v. Holder*, 793 F. Supp. 2d 440, 446 (D.D.C. 2011). In the same way, the All Writs Act, 28 U.S.C. § 1651(a), "is not itself a grant of jurisdiction." *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004). Castaneira fails to explain what independent jurisdiction-granting statute authorizes his claims for relief under either the Declaratory Judgment Act or All Writs Act, and therefore his invocation of those statutes does not help his jurisdictional case.

28 U.S.C. § 1361 likewise does not provide a basis for jurisdiction in this case. "[The] writ of mandamus . . . is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Furthermore, mandamus relief is appropriate "only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable." *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931). This Court has just construed 8 U.S.C. § 1154(a)(1)(A)(viii)(I) to delegate wholly unreviewable discretion to the agency to determine whether a Form I-130 petitioner convicted of a specified offense against a minor under the AWA has established that he presents "no risk" to the intended alien beneficiary. Defendants therefore do not owe Castaneira a clear, nondiscretionary duty to grant his Form I-130 petition, and mandamus relief is unavailable.

In conclusion, Castaneira's challenge to the burden of proof that USCIS applied in making its "no risk" determination under 8 U.S.C. § 1154(a)(1)(A)(viii)(I) is just as unreviewable as the final determination itself. And the Court sees no other bases of jurisdiction to sustain these claims. Accordingly, the Court will dismiss Castaneira's first, second, fourth, and fifth claims pursuant to Federal Rule of Civil Procedure 12(b)(1).

### B. Castaneira Fails to State a Claim That the AWA Does Not Apply

Defendants move to dismiss Castaneira's third claim—that his convictions do not qualify as "specified offense[s] against a minor," 34 U.S.C. § 20911(7), and thus the AWA does not apply to his case—pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Defs.' Mot. to Dismiss Am. Compl. at 23–28. The third claim asserts that Castaneira did not commit a "specified offense against a minor" because his crimes did not involve a person younger than eighteen years old, but instead, an adult undercover police officer posing as a minor. *See* Am. Compl. ¶¶ 31–41, 69–73. Defendants argue that that claim fails because an offense can still be a "specified offense gainst a minor" even if no actual minor was involved, and Castaneira conceded he was convicted of the offense and did not appeal or otherwise contest its validity. Defs.' Mot. to Dismiss Am. Compl. at 23–28; Defs.' Reply in Supp. of Mot. to Dismiss Am. Compl. at 7–8. Castaneira does not meaningfully respond to those arguments and therefore has arguably conceded them. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss Am. Compl. at 26–27. Nevertheless, given Castaneira's *pro se* status, the Court will explain why it agrees with defendants.

As noted above, 34 U.S.C. § 20911(7) lists multiple definitions of "specified offense against a minor." In this case, USCIS invoked the definitions in subsections (C), (G), (H), and (I): "[s]olicitation to engage in sexual conduct"; "[p]ossession, production, or distribution of child pornography"; "[c]riminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct"; and "[a]ny conduct that by its nature is a sex offense against a minor," respectively. 34 U.S.C. §§ 2091(7)(C), (G), (H), (I); *see* Denial at 2. The briefing on the motion to dismiss does not specify which particular definition it purports to interpret, but appears to center on whether Castaneira was convicted of "[a]ny conduct that by its nature is a

sex offense against a minor." 34 U.S.C. § 2091(7)(I); *see* Defs.' Mot. to Dismiss Am. Compl. at 23–28. At any rate, the Court concludes that Castaneira's offenses easily meet that definition, so the Court need not consider whether any of them meet the other definitions USCIS invoked.

As a threshold matter, the Court must determine the applicable interpretive framework. Castaneira contends that the Court must apply the categorical approach, under which courts may "look only to the statutory definitions"—i.e., the elements—of a defendant's prior or instant offenses, and not "to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see* Am. Compl. ¶¶ 70–71. In his view, the categorical approach requires a reading of "sex offense against a minor" that does not extend to any of the Georgia statutes he is convicted of violating, because it is possible to violate those statutes where there is no actual minor victim. *See* Am. Comp. ¶ 71–72. Another possible interpretive framework is the circumstance-specific approach, under which courts examine not just the elements of the crime, but "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *See Shepard v. United States*, 544 U.S. 13, 16 (2005).

While the D.C. Circuit has not addressed whether the definition of "sex offense against a minor" is analyzed under the categorical or circumstance-specific approach, every court of appeals to consider the question has held that the circumstance-specific approach applies. *See United States v. Thayer*, 40 F.4th 797, 802–05 (7th Cir. 2022); *United States v. Dailey*, 941 F.3d 1183, 1190–93 (9th Cir. 2019); *United States v. Hill*, 820 F.3d 1003, 1005 (8th Cir. 2016); *United States v. Price*, 777 F.3d 700, 708–09 (4th Cir. 2015); *United States v. Dodge*, 597 F.3d 1347, 1353–54 (11th Cir. 2010). This Court agrees.

15

Three aspects of the statute point toward the circumstance-specific approach as the proper mode of analysis. First, while another provision of the statute defines a "sex offense" as "a criminal offense that has an *element* involving a sexual act or sexual contact with another," 34 U.S.C. § 20911(5)(A)(i) (emphasis added), § 20911(7), which defines "specified offense against a minor," "contains no reference to the crime's 'elements,'" *United States v. Mi Kyung Byun*, 539 F.3d 982, 992 (9th Cir. 2008). Second, the words "against a minor" in § 20911(7) precede a general list of crimes, such as "kidnapping," "false imprisonment," and "[u]se in a sexual performance," that do not reference the victim's identity, suggesting, for example, that "any kidnapping offense becomes a 'specified offense against a minor' when the victim is a minor." *Id*. Finally, and most pointedly, § 20911(7)(I) covers "any *conduct* that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(7)(I) (emphasis added). The use of "conduct" in the residual clause, as opposed to "conviction," strongly indicates the circumstance-specific approach applies here. *Byun*, 539 F.3d at 992; *cf. Taylor*, 495 U.S. at 600 (reasoning that use of "convicted" rather than "committed" in a statute shows congressional intent for application of the categorical approach).

The question, therefore, is whether the particular conduct underlying Castaneira's offenses "by its nature is a sex offense against a minor," 34 U.S.C. § 20911(7)(I), even though his would-be victim was not in fact a minor, but an adult undercover police officer. The answer to that question is "yes."

As defendants note, the Board of Immigration Appeals ("BIA") considered a nearly identical question in *Matter of Izaguirre*, 27 I. & N. Dec. 67 (BIA 2017). The facts of that case are similar to this one. USCIS denied the petitioner's Form I-130 petition, filed on behalf of his beneficiary spouse, after deterninining that his conviction, computer-aided solicitation of a

16

minor in violation of La. R.S. § 14:81.3, was for a "specified offense against a minor" under the AWA. *Id.* at 67–68. The petitioner had communicated via the Internet with someone he presumed was a 14-year-old girl, but was actually an undercover police officer. *Id.* at 68–69. The BIA held "that an actual minor need not be victimized for the [AWA] to apply," because "a perpetrator who interacts with a person he believes is a minor, but who is, in fact, an undercover police officer, has the same intent as one who actually interacts with a minor." *Id.* at 69, 71.

What little case law exists concerning the same or similar issues under the AWA supports the BIA's conclusion in *Izaguirre*. The Eleventh Circuit has held, albeit without much analysis, that a sex offense is one "against a minor" for purposes of § 20911(7) so long as the offender "believed the victim was a minor." *See Dodge*, 597 F.3d at 1355–56. And most courts to address the question have held that other provisions of the AWA, which added the phrase "involves a minor victim" or "involving a minor victim" to various subsections of the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3142(c)(1)(B), (e)(3)(E), (f)(1)(E), apply where the defendant was actually interacting with an adult undercover officer, *see United States v. Larson*, No. 21-cr-41-JED, 2021 WL 2222737, at *4–6 (N.D. Okla. June 2, 2021); *United States v. Schuetz*, No. 12-mj-3046, 2012 WL 3185905, at *3–4 (C.D. Ill. Aug. 2, 2012); *United States v. Rizzuti*, 611 F. Supp. 2d 967, 969–70 (E.D. Mo. 2009); *but see United States v. Kahn*, 524 F. Supp. 2d 1278, 1281–84 (W.D. Wash. 2007).

This Court agrees with the BIA and the Eleventh Circuit that an offense may be "a sex offense against a minor" even where the offender was unwittingly interacting with an adult undercover officer. The text and purpose of the AWA point squarely in that direction.

First, as the BIA noted, if Congress intended the actual identity of the victim to be dispositive, it knew how to say so but chose not to. *See Izaguirre*, 27 I. & N. Dec. at 70–71. Just

three years before enacting the AWA, Congress enacted another statute using the term "actual minor." *See* Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, §§ 502(c), (d), 503(1)(a), 505, 117 Stat. 650, 679–80, 683 (codified at 18 U.S.C. §§ 2252A(a)(3)(B)(ii), (c)(2), (e), 2256(11)). Moreover, three other sections of the AWA use the word "actual" to modify "human being." *See* AWA, Pub. L. No. 109-248 §§ 502(a)(1), (4), 503(a), 120 Stat. at 625–26 (codified at 18 U.S.C. §§ 2257(a), (h)(2)(A)(i), 2257A(a)). And "[w]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks and citation omitted).[4]

Second, the statutory context in which § 20911(7)(I) sits suggests that Congress did not intend to require an actual minor victim. That section is a residual clause following a list of more specific definitions, including "[c]riminal sexual conduct involving a minor, or the use of the Internet to *attempt* such conduct." 34 U.S.C. § 20911(7)(H) (emphasis added). As the BIA noted, *attempt* to entice a minor to engage in sexual activity does not require an actual minor victim. *See Izaguirre*, 27 I. & N. Dec. at 70 (citing *United States v. Helder*, 452 F.3d 751, 753–56 (8th Cir. 2006)). Thus, reading § 20911(7)(I) in conjunction with its immediately preceding subsection, it appears that Congress was focused on the intent of the offender rather than the actual identity of the victim.

Third, as the BIA further reasoned, *see Izauirre*, 27 I. & N. Dec. at 70, a reading that excluded offenders who intended to harm a minor but who were merely factually unable to do so

---

[4] For the same reason, even if the phrases "involves a minor victim" and "involving a minor victim" in the portions of the AWA amending the BRA were properly interpreted to exclude offenses involving adult undercover officers, *see Kahn*, 524 F. Supp. 2d at 1281–84, that would actually strengthen the conclusion that Congress's choice to omit the word "victim" in § 20911(7)(I) evinces an intent not to focus on the actual identity of the victim.

18

would undermine the express purpose of the AWA: "to protect the public from sex offenders and offenders against children," 34 U.S.C. § 20901; *see also Dodge*, 597 F.3d at 1355 ("Congress cast a wide net to ensnare as many offenses against children as possible").

Having concluded that the phrase "sex offense against a minor" applies to offenses involving adult undercover officers, the Court easily concludes that that phrase applies to Castaneira's conduct. Castaneira concedes that he "was convicted of" the various Georgia offenses for using the "Internet to solicit/entice Cpl. Lackey, a person believed to be 15, to engage in sexual conduct" and for "Internet contact containing explicit verbal descriptions of sexual conduct with Cpl. Lackey, a person believed to be 15." Am. Compl. ¶ 34 n.10. That is "conduct that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(7)(I). USCIS was therefore correct that Castaneira was convicted of a "specified offense against a minor," and the Court must dismiss the third claim in the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons explained above, the Court will **GRANT** defendants' motion to dismiss Castaneira's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A separate Order shall issue this date.

Date: July 1_, 2023

_____
Royce C. Lamberth
United States District Judge