UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RYAN CASTANEIRA,

*Plaintiff,*

v.

MARKWAYNE MULLIN, *et al.*,

*Defendants.*

**Case No. 1:22-CV-1485-RCL**

# MEMORANDUM OPINION

This case is before the Court on remand from the D.C. Circuit. In 2023, the Court held that it lacked subject-matter jurisdiction over Plaintiff Ryan Castaneira's claim that United States Citizenship and Immigration Services ("the Agency") had applied the incorrect evidentiary standard when rejecting his Form I-130, Petition for Alien Relative. The D.C. Circuit held that the Court would possess subject-matter jurisdiction over Plaintiff's challenge if the evidentiary standard applied by the agency conflicted with binding agency precedent. The Circuit remanded for the Court to address that issue, which arrives in the form of cross-motions for summary judgment.

For the reasons stated herein, the Court holds that the Agency had adopted a binding evidentiary standard for the adjudication of Form I-130 applications and that its failure to apply that standard to Plaintiff's adjudication ran afoul of the *Accardi* doctrine. The Court rejects Plaintiff's alternative challenge to the Agency's adoption of the evidentiary burden under the APA because it lacks subject-matter jurisdiction to review the Agency's decision. Plaintiff's Motion for

Summary Judgment and Defendants' Cross-Motion for Summary Judgment will each accordingly be granted in part and denied in part.

# I. BACKGROUND

## A. Statutory & Regulatory Background

"Immediate relatives of U.S. citizens, including spouses and children, receive certain preferential treatment under the Immigration and Nationality Act ("INA")." *Castaneira v. Mayorkas*, 682 F. Supp. 3d 19, 21 (D.D.C. 2023) (citing 8 U.S.C. § 1151(b)(2)(A)(i)). To request that a foreign national be recognized as an "immediate relative," a United States citizen may file a "Form I-130" petition with United States Citizenship and Immigration Services ("the Agency"). *See Castaneira v. Noem*, 138 F.4th 540, 542 (D.C. Cir. 2025) (citing 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1)).

If the Attorney General "determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative," the statute directs them to "approve the petition . . . ." 8 U.S.C. § 1154(b); *see also Castaneira*, 138 F.4th at 542. The citizen's relative may then "immigrate to the United States and obtain lawful permanent resident status." *Castaneira*, 138 F.4th at 542 (citing 8 U.S.C. § 1154(b)). The petitioner has the burden of "proving the beneficiary's eligibility." *Id.* at 543 (citing 8 U.S.C. § 1361).

But the Adam Walsh Act ("AWA") restricts this process. *See id.* Congress enacted the AWA to address sexual exploitation, Pub. L. No. 109-248, 120 Stat. 587, 587 (2006), and amended the INA to exclude from the I-130 process any "citizen of the United States who has been convicted of a specified offense against a minor . . . ," *id.*, 120 Stat. at 623 (codified at 8 U.S.C. § 1154(a)(1)(A)(viii)(I)); *see also Castaneira*, 138 F.4th at 543.

The AWA specified that nine categories of offenses qualify as "offens[es] against a minor," including "kidnapping," "false imprisonment," "[s]olicitation to engage in sexual conduct," "[u]se in a sexual performance," "[s]olicitation to practice prostitution," "[v]ideo voyeurism," child pornography offenses, "[c]riminal sexual conduct involving a minor," and "[a]ny conduct that by its nature is a sex offense against a minor." 8 U.S.C. § 1154(a)(1)(A)(viii)(II) (incorporating offenses defined at 34 U.S.C. § 20911(7)); *see also Castaneira*, 138 F.4th at 543–44.

A petitioner found to have been convicted of one of those offenses may still pursue immigration benefits if "the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition described in clause (i) is filed." Pub. L. No. 109-248, 120 Stat. at 623 (codified at 8 U.S.C. § 1154(a)(1)(A)(viii)(I)); *see also Castaneira*, 138 F.4th at 543. USCIS now performs that "no-risk" determination. *See Castaneira*, 138 F.4th at 544 (citing 6 U.S.C. § 271(b)(1); 8 C.F.R. §2.1).

But the AWA does not lay out precisely how to conduct a no-risk determination. *See Castaneira*, 138 F.4th at 544. For example, it "does not specify . . . the applicable evidentiary standard pursuant to which the petitioner must demonstrate that he poses no such risk." *Id.*

Without that textual guidance, the Agency was left to interpret the statue. It addressed the applicable evidentiary standard in the February 2007 Aytes Memorandum, which instructed "field officers in an internal interoffice memorandum that, to 'avoid denial' of an I-130 petition . . . , the petitioner must 'submit evidence of rehabilitation . . . that clearly demonstrates, beyond any

reasonable doubt, that he or she poses no risk to the safety and well-being' of the beneficiary . . . ." *Id.* (quoting Michael Aytes, Interoffice Memorandum at 5, ECF No. 55 at 60).[1]

This case is about that evidentiary burden. Understanding the tension requires turning back the clock. Before the Agency had adopted the beyond-any-reasonable-doubt standard for AWA determinations (and, in fact, before the AWA became law), the Agency's Administrative Appeals Office had held that "[e]xcept where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought." *Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (A.A.O. 2010); *see also Castaneira*, 138 F.4th at 544.

That decision became precedential in 2010, after the Aytes Memorandum had instructed Agency personnel to apply the beyond-any-reasonable-doubt standard to no-risk determinations under the AWA. *Castaneira*, 138 F.4th at 544. The tension between *Chawathe*'s elevation to precedent after the adoption of the Aytes Memorandum and the Agency's application of the beyond-any-reasonable-doubt standard to Plaintiff's adjudication is the crux of this dispute.

**B. Factual Background**

Plaintiff filed a Form I-130 application in 2019, seeking recognition of his spouse, a Mexican national, as an immediate relative. *Castaneira*, 138 F.4th at 544. The Agency responded by sending Plaintiff a "Notice of Intent to Deny because he had been convicted of crimes in Georgia that appeared to qualify as 'specified offenses against a minor' under the Adam Walsh Act." *Id.* at 542.

---

[1] The Court uses ECF-provided page numbers where available, otherwise citing to the page numbers provided by the parties.

Specifically, Plaintiff had been convicted of "criminal attempt to commit child molestation, criminal attempt to entice a child for indecent purposes, computer pornography and child exploitation, and obscene Internet contact." *Id.* at 544–45 (citing *Castaneira v. State*, 740 S.E.2d 400, 408 (2013); Georgia Computer or Electronic Pornography and Child Exploitation Prevention Act, O.C.G.A. § 16-12-100.2(d)(1), (e)(1) (West 2024)). He committed those crimes when "he engaged in online conversation on an adult-only website with an individual whom he believed to be 15 years old, but who was in fact an adult undercover police officer." *Id.* at 545 (citing *Castaneira*, 740 S.E.3d at 402–03).

Based on those convictions, the Agency informed Plaintiff that there were two ways in which his Form I-130 could be approved. First, he could "demonstrate[] by a preponderance of the evidence that he had not been convicted of a 'specified offense against a minor.'" *Id.* (citing 8 U.S.C. § 1154(a)(1)(A)(viii)(I)); *see also* Compl. Ex. A at 2 ("Notice of Intent to Deny"). If he could not do so, he would have to prove "beyond any reasonable doubt" that he posed no risk to his spouse. *Castaneira*, 138 F.4th at 545; *see also* Notice of Intent to Deny at 3. The Agency informed Plaintiff that he could do so by providing, for example, "[c]ertified records indicating successful completion of counseling or rehabilitation programs;" "evaluations by qualified psychiatrists, clinical psychologists, or clinical social workers" attesting to his rehabilitation; evidence of "intervening good and exemplary service to the community or in the uniformed services;" etc. Notice of Intent to Deny at 4–5.

**B. Procedural History**

In 2022, while the Agency's decision was still pending and before providing any of the requested evidence, *Castaneira*, 138 F.4th at 545, Plaintiff filed a *pro se* complaint in this Court "seeking injunctive and declaratory relief, challenging the agency's use of the beyond-any-

reasonable-doubt standard . . . , and requesting a judgment declaring the Adam Walsh Act inapplicable to his convictions," *id.* at 542; Compl., ECF No. 1. Plaintiff claimed that the Agency could not deny his petition on the stated grounds because "his prior convictions involved an undercover officer, not a minor, and thus could not have constituted an offense 'against a minor' under the statute." *Castaneira*, 138 F.4th at 542.

Plaintiff then submitted evidence of rehabilitation, but the Agency determined that it was insufficient to "clear the beyond-any-reasonable-doubt bar." *Id.* at 545; *see also* Am. Compl., ECF No.15 Ex. F at 2–5 ("Denial Notice").

After receiving that final decision, Plaintiff amended his complaint. *Castaneira*, 138 F.4th at 545. The Amended Complaint alleged that the Agency failed to follow its own binding precedent in applying a beyond-any-reasonable-doubt standard, that his prior convictions did not qualify as offenses against a minor under the AWA, and that the Agency "violated the Administrative Procedure Act ("APA") in arbitrarily and capriciously refusing to adhere to its own precedent." *Castaneira*, 138 F.4th at 542–43.

The Agency moved to dismiss the Amended Complaint. *See* Defs.' Mot. to Dismiss, ECF No. 18.

1. District Court Proceedings

This Court rejected each of Plaintiff's arguments. *Castaneira*, 682 F. Supp. 3d at 25, 28; *see also Castaneira*, 682 F. Supp. 3d at 25–28, 29–31.

First, the Court determined that Plaintiff's convictions were qualifying offenses under the AWA even though the "would-be victim was not in fact a minor." *Castaneira*, 682 F. Supp. 3d at 30 ("The question, therefore, is whether the particular conduct underlying Castaneira's offenses

'by its nature is a sex offense against a minor,' even though his would-be victim was not in fact a minor, but an adult undercover police officer. The answer to that question is 'yes.'" (quoting 34 U.S.C. § 20911(7)(I))); *see also Castaneira*, 138 F.4th at 545. Accordingly, the Court dismissed that claim pursuant to Federal Rule 12(b)(6). *Id.* at 31.

Second, the Court held that it lacked jurisdiction to review the Agency's "no-risk" determination based upon the INA's jurisdiction-stripping provisions. Under the INA, a court may not review "any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [8 U.S.C., ch. 12, subch. 2] to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Castaneira*, 682 F. Supp. 3d at 25 (alterations in original) (quoting 8 U.S.C. §1252(a)(2)(B)(ii)). Because of 8 U.S.C. § 1154(a)(1)(A)(viii)(I)'s expansive vesting of discretion with the Secretary to conduct "no-risk" determinations, the Court held that those determinations were unreviewable under the INA. *Id.* at 26.

Though Plaintiff acknowledged that the ultimate determination was unreviewable, he argued that courts may "review the evidentiary standard used in making that determination." *Id.* The Court disagreed, relying upon substantial authority which indicated that the Agency's selection of the evidentiary standard was encompassed by the agency's unreviewable discretion. *Id.* (collecting cases). Because the Court determined that it lacked jurisdiction to afford Plaintiff relief, it did not reach the question of whether the Agency had departed from "*Chawathe* (or any other agency precedent) in applying the stringent beyond-any-reasonable-doubt standard of proof." *Castaneira*, 138 F.4th at 548; *see also Castaneira*, 682 F. Supp. 3d at 27.

2. Appeal

Plaintiff, still proceeding *pro se*, appealed this Court's dismissal to the D.C. Circuit. *See* Notice of Appeal, ECF No. 35; *Castaneira*, 138 F.4th at 546.

The D.C. Circuit agreed with the Court's determination that Plaintiff's prior convictions qualified as sex offenses against a minor under the AWA and therefore affirmed the Court's "dismissal of [Plaintiff's] claim that the AWA does not encompass his past state convictions." *Castaneira*, 138 F.4th at 548.

With respect to Plaintiff's argument about the evidentiary standard applicable to the "no-risk" determination, the Circuit held that the fact that the Secretary's ultimate determination is immune from judicial review does not foreclose an inquiry of whether she "properly disregarded applicable agency precedent and spurned the preponderance standard when she denied [Plaintiff's] Form I-130 petition." *Id.* at 549 (citing 8 U.S.C. § 1154(a)(1)(A)(viii)(I)). The Circuit held that if the standard announced in *Chawathe* is binding, "the agency has cabined its own discretion through its own precedent, and it must exercise its discretion in the manner it itself sets out." *Id.* at 551 (citing *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003)).

The Circuit therefore remanded the case so that the Court may consider whether the Agency has adopted binding precedent. *Id.* If it has, the Court "must exercise its judicial review over [Plaintiff's] challenge to the standard of review." *Id.*

**C. Present Motions**

Plaintiff filed his Second Amended Complaint in March 2026. Second Am. Compl., ECF No. 43 ("SAC"). Counts I and II of the Second Amended Complaint allege that the Agency violated the *Accardi* doctrine by failing to adhere to the Agency's binding precedent regarding the

applicable evidentiary standard. SAC ¶¶ 57–66.[2] As Count IV, Plaintiff invokes the Declaratory Judgment Act to allege that the Agency's interpretation of the term "no risk" is unclear, meaning that he is "unsure what evidence he must adduce" to rebut the Agency's decision. *Id.* ¶ 72. Finally, Count V realleges that the Agency ran afoul of *Accardi* by applying a beyond-any-reasonable-doubt standard and contends that Plaintiff has provided evidence sufficient to meet the preponderance standard, which he claims the Agency should have applied. *Id.* ¶¶ 74–81.

The Agency filed an Answer in April 2026, Defs.' Answer, ECF No. 45, and served the administrative record in May 2026, ECF No. 46.

Shortly thereafter, Plaintiff moved for summary judgment. Pl.'s Mot. for Summ. J., ECF No. 47 ("Pl.'s Mot."). The Agency cross-moved for summary judgment. Defs.' Mot. for Summ. J. & Resp. to Pl.'s Mot. for Summ. J., ECF No. 49 (Defs.' Mot."). Those motions are now ripe for the Court's review. *See* Pl.'s Resp. to Defs.' Cross-Mot. for Summ. J., ECF No. 51 ("Pl.'s Resp."); Pl.'s Reply, ECF No. 52; Defs.' Reply, ECF No. 53.

## II. LEGAL STANDARDS

### A. Subject-Matter Jurisdiction

"Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (internal quotation marks omitted) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007).

---

[2] Plaintiff is not pursuing Count III. SAC ¶ 68.

**B. Summary Judgment**

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Upon cross-motions for summary judgment, courts consider each motion individually, view the evidence in the light most favorable to the nonmovant, and determine whether the Rule 56 standard is met." *Am. Fed'n of Labor and Cong. of Indus. Orgs. v. Dep't of Labor*, 836 F. Supp. 3d 137, 153 (D.D.C. 2026) (citing *Am. Ctr. for Int'l Lab. Solidarity v. Chavez-DeRemer*, 789 F. Supp. 3d 66, 80 (D.D.C. 2025)).

In an APA case like this one, the "district judge sits as an appellate tribunal" and the whole case "is a question of law." *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). So, "[a]s a practical matter, the merits of § 706 claims are almost always resolved by granting summary judgment for one party or the other" because "APA claims present a singular question—whether, as a matter of law, the evidence in the administrative record permitted the agency to act as it did." *Am. Fed'n of Labor*, 836 F. Supp. 3d at 154 (citing *Drs. for Am. v. Off. of Pers. Mgmt.*, 793 F. Supp. 3d 112, 131 (D.D.C. 2025)).

## III. ANALYSIS

Plaintiff's arguments can be crystalized into two claims. First, he argues that the Agency violated the *Accardi* doctrine by failing to adhere to its binding precedent. *See* Pl.'s Mot. at 18, 24. Second, he argues that even if the evidentiary standard in *Chawathe* was not binding, the adoption of the beyond-any-reasonable-doubt standard was arbitrary and capricious under the

APA. *Id.* at 25. The Court addresses each claim in turn. Plaintiff succeeds under *Accardi*, but his alternative APA claim fails.

**A. *Accardi* Claim**

Plaintiff seeks "a declaration that *Chawathe* supplies the controlling standard of proof for the AWA 'no risk' determination." Pl.'s Mot. at 10. The Court understands this relief to correspond to Counts I & II of the Second Amended Complaint which allege that the Agency ran afoul of *Accardi* by failing to adhere to binding precedent. *See* SAC ¶¶ 57–66. But to reach that analysis, the Court must first determine whether it has subject-matter jurisdiction. After navigating a largely uncharted legal landscape, the Court concludes that it does have jurisdiction and that Plaintiff is entitled to summary judgment.

1. Subject-Matter Jurisdiction

The Circuit has held that the Court has subject matter jurisdiction to review agency action for consistency with its binding procedures, even where the agency has broad discretion in reaching the result of those procedures. *Id.* at 551 ("Even where Congress has accorded an agency broad discretion, if the agency itself chooses to bind itself to published procedures, this choice means that it must then 'exercise its own discretion' in accordance with its own 'existing valid regulations' and binding precedents." (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954))).

a. *Chawathe* Applies to AWA No-Risk Determinations

The question is whether *Chawathe* binds the Agency in its AWA determinations. The Circuit noted that "[i]t is possible that *Chawathe* does not apply in the AWA context and that, in making its preponderance-of-the-evidence standard precedential, the Department did not mean to

disturb the beyond-any-reasonable doubt standard that may have already been in place for no-risk determinations under the AWA." *Id.* at 551. The Circuit's statement can be broken down into two inquiries. First, was the "beyond-any-reasonable-doubt" standard already in place for no-risk determinations under the AWA? Second, did the Agency intend to disturb that practice?

With respect to the first inquiry, there is little doubt that the "beyond-any-reasonable-doubt" standard was already in place for AWA determinations. The Agency's arguments all seek to justify its applicability, *see* Defs.' Mot. at 17–20, and Plaintiff does not dispute the issue, SAC ¶ 10 ("Defendants routinely require Adam Walsh Act Form I-130 petitioners, such as Plaintiff, to establish, beyond a reasonable doubt, that they pose no risk to intended beneficiaries . . . .").[3]

This dispute is really about the second question. But at the outset, the Court notes that there is scant legal authority for determining whether the "Department . . . mean[t] to disturb" its practice. *Castaneira,* 138 F.4th at 551. Because "[t]he D.C. Circuit stands alone" in allowing judicial review of the consistency of the Agency's evidentiary burden with its precedent, *Nobles v. Mullin*, 177 F.4th 886, 894 (7th Cir. 2026), courts in other circuits have not determined whether *Chawathe* is binding on AWA determinations, *see id.*; *Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 542 (11th Cir. 2019); *Bremer v. Johnson*, 834 F.3d 925, 931 (8th Cir. 2016). The Court must therefore make its own way in addressing what appears to be a matter of first impression.

There is no doubt that *Chawathe* is a precedential decision binding on the Agency. *See Castaneira*, 138 F.4th at 549 ("*Chawathe* constitutes binding agency precedent pursuant to the agency's own regulations."); 8 C.F.R. § 1003.1(i); *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of*

---

[3] As discussed below, however, there is some indication that the agency has applied a preponderance standard in AWA determinations.

*Homeland Sec.*, 769 F.3d 1127, 1137 (D.C. Cir. 2014); *Wang v. U.S. Citizenship & Immigr. Servs.*, 375 F. Supp. 3d 22, 27 (D.D.C. 2019). And parties do not dispute that *Chawathe* was properly designated as precedential on October 20, 2010. *See* Pl.'s Mot. at 16; Def.'s Mot. at 20; *see also Chawathe*, 25 I. & N. Dec. at 369 n.1 ("This matter was initially decided on January 11, 2006, and designated as an 'adopted decision' of U.S. Citizenship and Immigration Services ("USCIS"), guiding USCIS officers in their administration of the immigration laws. It was not designated as precedent under 8 C.F.R. § 1003.1(i) (2010) until October 20, 2010.").

The Agency nonetheless argues that *Chawathe* does not apply to AWA determinations. The Court begins with the case itself. In *Chawathe*, the Administrative Appeals Office ("AAO") considered whether an immigration beneficiary had adequately demonstrated continuous residence under 8 U.S.C. § 1427(b). 25 I. & N. Dec. at 369. Doing so required the AAO to determine whether the applicant had demonstrated that a company was an American firm. *Id.* at 374–75. The AAO held that the applicant had met the preponderance of the evidence standard, which it applied because the statute was silent on the matter. *Id.* Specifically, the AAO wrote that "[e]xcept where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought." *Chawathe*, 25 I. & N. Dec. at 375.

By its text, *Chawathe* applies to AWA no-risk determinations because the AWA does not specify an evidentiary standard. The AWA provides that a petitioner must demonstrate to the Secretary's satisfaction "that the [petitioner] poses no risk to the alien with respect to whom a petition described in clause (i) is filed." Pub. L. No. 109-248, 120 Stat. at 623 (codified at 8 U.S.C. § 1154(a)(1)(A)(viii)(I)). The Circuit has already opined that the language does not contain an

evidentiary standard. *See Castaneira*, 138 F.4th at 551 ("Nothing in the Act required the agency to adopt any particular standard.").

The Agency appears to resist that conclusion. It argues that the text of the AWA is incompatible with a preponderance standard because the AWA intended to place "an extremely arduous burden on certain sex offenders' ability to file family-based immigration petitions," and that the term "no risk" is "irreconcilable" with such a standard because it would allow a petitioner to succeed even if they presented some risk to the beneficiary. Defs.' Mot. at 10, 8, 18.[4]

But the Agency is missing the point. Evidentiary burdens deal with the degree of certainty with which a proposition can be sustained, not with the content of the underlying proposition. *See Addington v. Texas*, 441 U.S. 418, 423 (1979) ("The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" (quoting *In re Winship*, 397 U.S. 358, 370 (1970))). It is therefore as logical to say something like: "I am 51% certain that there will be *no* rain during the marathon," contrary to the Agency's logic. *See* Defs.' Mot. at 9.

And even if the Agency were correct about the meaning of "no risk," its argument goes too far. Applying a beyond-any-reasonable-doubt standard still entails *some* risk of harm, albeit a very low risk. *See Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring in part) (describing a sufficient beyond-a-reasonable-doubt instruction to convey "that the prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty"); *United States v. Lyle*, No. 23-cr-20098, 2026 WL 1507696, at *2 (E.D. Mich.

[4] The Agency notes that the term "no risk" is "singular in the field of immigration law," Defs.' Mot. at 11, but it provides no authority at all for that proposition.

May 29, 2026) ("Proof beyond a reasonable doubt, while a high standard, does not mean proof beyond all possible doubt.").

The Agency's arguments about the restrictive intent of the AWA are also unpersuasive. Even accepting that Congress wished to prevent abuse by barring certain petitions, Defs.' Mot. at 11., that objective is not at all relevant to the procedures, including evidentiary burdens, by which they would achieve those goals.[5] And if Congress wished to set an evidentiary burden, it knew how to do so. *See, e.g.,* 8 U.S.C. § 1154(a)(2)(A)(ii) (specifying a clear and convincing evidence standard).

Even setting all that aside, the D.C. Circuit already interpreted the AWA to lack a particular evidentiary standard, *see Castaneira*, 138 F.4th at 551, and the Court is bound by the law of the case, *see Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995) ("[A] court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases.").

The Agency also attempts to mobilize chronology to explain why *Chawathe* nonetheless does not disturb no-risk determinations under the AWA. It points out that *Chawathe* was decided before the AWA became law and that draft memoranda demonstrate that the Agency explicitly rejected the preponderance standard for AWA cases. Defs.' Mot. at 13. The Agency also notes that by the time that *Chawathe* was designated as binding precedent, the Agency had been operating under its "beyond-any-reasonable-doubt" standard for over three years. *Id.* at 16.

[5] The Agency's arguments about the terms "prevent" and "barring" in section titles are therefore *non sequiturs*. *See* Defs.' Mot. at 10.

Therefore, they argue, adopting *Chawathe* "left the beyond any reasonable doubt standard undisturbed." *Id.*

That argument is unpersuasive. As a matter of logic, the fact that the Agency designated *Chawathe* as binding precedent after the Agency had an established practice of applying a beyond-any-reasonable-doubt standard is consistent with the conclusion that the Agency decided to reverse its previous determination and adopt a new, binding evidentiary standard. And if the beyond-any-reasonable-doubt standard had been so "firmly ensconced," *id.* at 16, at the time that *Chawathe* was elevated to binding precedent, it would be odd not to exclude AWA determinations from the standard that *Chawathe* announced if the Agency truly intended to maintain to its previous practices.

The Agency's decisions after elevating *Chawathe* to binding precedent also indicate that it applied to AWA determinations. In three cases from 2012, the AAO applied a preponderance of the evidence standard to no-risk determinations under the AWA. *See In re. Petitioner*, 2012 WL 9160988, at *4 (Nov. 5, 2012) ("Overall, a preponderance of the relevant evidence establishes that the petitioner poses no risk to the beneficiary with whom he has been in a relationship for approximately four years."); *In re. Petitioner*, 2012 WL 8593908, at *2 (May 24, 2012) ("In proceedings for an alien fiance(e) petition, the petitioner bears the burden of proving eligibility by a preponderance of the evidence. Here, that burden has not been met because the petitioner has failed to establish that he poses no risk to the beneficiary." (citation omitted) (citing 8 U.S.C. § 1361; *Chawathe,* 25 I&N Dec. at 375)); *In re. Petitioner*, 2012 WL 9161910, at *3 (Sept. 24, 2012).[6]

---

[6] These cases refer to I-129F petitions which are also subject to no-risk determinations under the AWA. *See Nobles*, 177 F.4th at 892 n.3 (citing guidelines for applying the AWA to I-129F

The Government's argument that "*Chawathe* is a wholly distinguishable case on the law and the facts," Defs.' Mot. at 17, is also unpersuasive because the Agency has drawn on it to justify applying a preponderance standard in adjudications under other statutes. *See, e.g., Mo v. U.S. Citizenship & Immigr. Servs.*, 719 F. Supp. 3d 21, 25 (D.D.C. 2024) (applying *Chawathe* to EB-5 adjudication under 8 U.S.C. §1361); *Li v. U.S. Citizenship & Immigr. Servs.*, No. 25-00002, 2026 WL 799490, at *2 (D.D.C. Mar. 23, 2026) (same); *Chain-Sys Corp. v. U.S. Citizenship & Immigr. Servs.*, No. 2:15-cv-01466, 2016 WL 285037, at *3 (C.D. Cal. Jan. 12, 2016) (same); *VVP Advisors, Inc. v. Baran*, No. 8:19-cv-00919, 2020 WL 1652556, at *10 (C.D. Cal. Mar. 25, 2020) (applying *Chawathe* to an H1-B visa under 8 U.S.C. § 1101(a)(15)(H)(i)(b)); *Fontenoy Eng'g, Inc. v. Baran*, No. 18-cv-03361, 2020 WL 137155, at *11 (N.D. Cal. Jan. 13, 2020) (same).

Finally, the Agency argues that Plaintiff's reading of *Chawathe* would "preclude Congress from actually allocating any discretion to USCIS." Defs.' Mot. at 17. But that is beside the point. The question here is whether the Agency, in exercising discretion provided by Congress, bound itself to *Chawathe*. *See Castaneira*, 138 F.4th at 549 ("[I]f the Secretary exercised her discretion to bind herself to a preponderance standard in no-risk determinations under this statute, the fact that she has 'sole and unreviewable' discretion to make that determination does not preclude judicial review . . . .").

b. *Mullin* Does not Overrule the D.C. Circuit

As a final Hail Mary, the Agency argues that recent Seventh Circuit and Supreme Court precedent have "undermine[d] the D.C. Circuit's holding" in this case. Defs.' Mot. at 27–28. This

---

petitions); *Bittinger v. Johnson*, No. 1:14-cv-1560, 2015 WL 3842649, at *1 (M.D. Pa. June 22, 2015).

Court is "bound to follow controlling D.C. Circuit precedent unless and until the Circuit overrules that precedent *en banc* or intervening Supreme Court authority 'eviscerate[s]' the law of the Circuit." *Wehr-Darroca v. Dist. of Columbia*, No. 24-cv-3504, 2025 WL 2694790, at *3 (D.D.C. Sept. 22, 2025) (alteration in original) (citing *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)).

There is no doubt that the D.C. Circuit's holding controls this case regardless of the Seventh Circuit's stance on the matter. The relevant question is therefore whether Supreme Court authority has eviscerated the D.C. Circuit's holding. *See Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023) ("We may depart from the law of the case and from circuit precedent, however, based on an intervening Supreme Court decision." (citing *Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014))).

Defendants rely upon *Mullin v. Doe*, where the Supreme Court recently interpreted 8 U.S.C. § 1254a(b)(5)(A), which bars judicial review "of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination, or extension of a designation, of a foreign state under this subsection." 146 S. Ct. 2121, 2133 (2026) (alteration in original) (quoting 8 U.S.C. § 1254a(b)(5)(A)). There, the Supreme Court noted that it is "common to use the term 'determination'" in a broad sense, encompassing "the chain of events leading up to a decision." *Id.* at 2133.

Because the D.C. Circuit's decision here similarly depends on the word "determines," *Castaneira*, 138 F.4th at 550 (stating that *McNary*'s analysis of the term "determination" applies with equal force to the AWA's use of the verb "determines"), the Agency argues that the Court should apply the broad definition advanced in *Mullin* to include steps leading to the ultimate

decision, Defs.' Mot. at 28–29. The Agency also points out that the D.C. Circuit relied on *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991), for the proposition that "Congress may shield from judicial review an agency's ultimate determination without precluding courts form reviewing the 'practice[s] or procedure[s] employed in making' such individual terminations, *Castaneira*, 138 F.4th at 549 (quoting *McNary*, 498 U.S. at 492); Defs.' Mot. at 28–29. And in *Mullin*, the Supreme Court read *McNary* narrowly, holding that it "turned on the specific provision at issue." *Mullin*, 146 S. Ct. at 2134.[7]

The Court is not persuaded. Heeding the Supreme Court's instruction to privilege statutory text over *McNary*, the Court proceeds by considering whether the text of the AWA is sufficiently analogous to the statute at issue in *Mullin* to effectively constitute reversal of the D.C. Circuit. Recall the text of the AWA. The Act affords "the Secretary of Homeland Security . . . sole and unreviewable discretion [to] determine[]" whether a Form I-130 petitioner . . . has established that he presents 'no risk' to the intended alien beneficiary." *Castaneira*, 682 F. Supp. 3d at 26 (alterations in original) (quoting 8 U.S.C. § 1154(a)(1)(A)(viii)(I)).

The Supreme Court's decision to interpret "determination" broadly in *Mullin* relied in part on the phrase "with respect to," which the Court interpreted as having "a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that

---

[7] The statute at issue in *McNary* "barred 'review of a determination respecting *an application* for adjustment of status under' that program except in removal proceedings." *Mullin*, 146 S. Ct. at 2133 (emphasis in original) (quoting § 1160(e)(1)). The Supreme Court therefore held that "[b]ecause this provision referred to 'a single act,' *i.e.*, a ruling on an individual application, . . . broad claims about the procedures used in implementing the program could proceed." *Id.* (quoting *McNary*, 498 U.S. at 492).

subject." *Mullin*, 146 S. Ct. at 2133–34 (internal quotation marks omitted) (quoting *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022)). But that phrase is absent in the AWA.

A panel of the D.C. Circuit recently made a similar distinction when applying *Mullin* to the term "determination" in another statute. *See Teva Pharms. USA, Inc. v. Kennedy*, 187 F.4th 587, 604 (D.C. Cir. 2026). In *Teva*, the Circuit interpreted a statute which provided that "[t]here shall be no administrative or judicial review of . . . the determination of qualifying single source drugs . . . ." *Id.* at 603. The Circuit held that *Mullin* did not control because the statutory language there "swept broadly," including the phrase "with respect to." *Id.* In contrast, the statute in *Teva Pharmaceuticals* merely barred review of "the determination." *Id.*

The issue is close, but following the D.C. Circuit's interpretation of *Mullin*, the Court concludes that the AWA does not preclude judicial review because it does not contain analogous broadening language to the statute at issue in *Mullin*. *See California v. EPA*, No. 26-cv-2185, 2026 WL 2593640, at *19 (D.D.C. Sept. 2, 2026) (holding that *Mullin*'s broad reading of "determination" did not apply where the statute lacked broadening language).

And the D.C. Circuit drew another relevant distinction in *Teva*. It held that *Mullin* concerned the adequacy of the Secretary's consultation with the State Department, which dealt with "the quality of the [agency's] reasoning rather than the scope of its authority." *Teva*, 187 F.4th at 604–05 (internal quotation marks omitted) (alteration in original) (quoting *Ardelyx, Inc. v. Kennedy*, 179 F.4th 947, 963 (D.C. Cir. 2026)). In contrast, the challenge in *Teva* targeted "the scope of [the agency's] statutory authority, not the quality of the reasoning underlying any such determination." *Id.* That reasoning preserves review here as well because Plaintiff is analogously

challenging the Agency's authority to depart from its binding precedent. *Castaneira*, 187 F.4th at 551.

Accordingly, though the Court recognizes that the D.C. Circuit's reasoning in this case is subject to debate considering *Mullin*, it cannot be said that the Supreme Court has "effectively overrule[d]" the law of the Circuit as applied to this case. *Bahlul*, 77 F.4th at 926 (quoting *United States v. Williams*, 194 F.3d 100, 105 (D.C. Cir. 1999)).

The Court therefore determines that the Agency did bind itself to a preponderance standard in AWA determinations by adopting *Chawathe* as binding precedent. It joins one dissent from the Eleventh Circuit in that view. *Bourdon*, 940 F.3d at 551 (Jordan, J., dissenting) ("Here, as noted, § 1154(a)(1)(A)(viii)(I) does not specify any evidentiary standard whatsoever. Under *Chawathe*, then, USCIS was obligated to use the preponderance-of-the-evidence standard to determine whether Mr. Bourdon had shown that he posed 'no risk' to his wife."). The Eleventh Circuit itself did not address the issue because the panel concluded that the court lacked subject matter jurisdiction to review "the Secretary's chosen burden of proof." *Id.* at 542.

2. Merits

Having determined that the Court has subject-matter jurisdiction over Plaintiff's challenge under controlling D.C. Circuit precedent, it now proceeds to address the merits. Plaintiff alleges that by applying a beyond-any-reasonable-doubt standard instead of the binding preponderance standard announced in *Chawathe*, the Agency violated the *Accardi* doctrine. Pl.'s Mot. at 24–25.

The *Accardi* doctrine prohibits agencies from "violat[ing] their own rules and regulations to the prejudice of others." *Battle v. FAA.*, 393 F.3d 1330, 1336 (D.C. Cir. 2005). Put another way, "an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding

policies that limit its discretion." *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987); *see also IGI v. Mullin*, No. 25-cv-03898, 2026 WL 2837310, at *12 (D.D.C. Sept. 22, 2026) ("[A]n agency pronouncement is subject to *Accardi* if it imposes 'rights or obligations on the respective parties,' places 'significant restraints on the agency's discretion,' or is 'intended' to function as a 'binding norm.'" (citing *Padula*, 822 F.2d at 100; *Damus v. Nielsen*, 313 F. Supp. 3d 317, 336–37 (D.D.C. 2018); *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 120–21 (D.D.C. 2020))).

a. *Accardi* Violation

The *Accardi* doctrine applies to the evidentiary burden adopted in *Chawathe*. As discussed above, *Chawathe* is properly adopted, binding agency precedent which restrains the Agency's discretion. *See Castaneira*, 138 F.4th at 549 ("*Chawathe* constitutes binding agency precedent pursuant to the agency's own regulations."); 8 C.F.R. § 1003.1(i).

There is no dispute that the Agency did not apply a preponderance standard to the adjudication of Plaintiff's petition. SAC Ex. F at 3 ("To avoid the denial of a family-based visa petition, a petitioner who has been convicted of a 'specified offense against a minor' must submit evidence that demonstrates, beyond any reasonable doubt, that he or she poses no risk to the beneficiary."); *id.* at 5 ("The need for continued monitoring, treatment, and your continued probation do not support a conclusion, beyond any reasonable doubt, that you pose no risk to the safety and well-being of the beneficiary."). Of course, the Agency does not dispute that point, instead relying on its argument that a preponderance standard is inappropriate. *See* Defs.' Mot. at 17–19.

b. Prejudice

The violation of binding precedent is clear enough, but there is a complication that neither party has addressed in the briefing: prejudice.[8] There is some debate over when prejudice is required to prevail on an *Accardi* claim. *See Leslie v. Attorney General*, 611 F.3d 171, 177 (6th Cir. 2010) (collecting cases); 34 Wright & Miller's Federal Practice & Procedure § 8172 (2d ed. Apr. 2026 update).

The Sixth Circuit has held that a violation of the *Accardi* principle that infringes on a fundamental right does not require a showing of prejudice. *Leslie*, 611 F.3d at 178–79; *accord Abedi v. Carter*, No. 25-3179, 2026 WL 3149141, at *23–*24 (10th Cir. Oct. 21, 2026). The Third Circuit agrees but has noted that only where a violation is "a structural error that necessarily makes proceedings fundamentally unfair" will a showing of prejudice be excused. *Aquino v. Attorney General*, 53 F.4th 761, 766 (3d Cir. 2022). Other Circuits do not require a showing of prejudice at all. *See Montilla v. Immigr. & Naturalization Serv.*, 926 F.2d 162, 168–69 (2d Cir. 1991).

In this circuit, prejudice is generally required to prevail on an *Accardi* claim. *See Sheble v. Huerta*, 755 F.3d 954, 957 (D.C. Cir. 2014); *Vanover v. Hantman*, 38 Fed. App'x 4, 5 (D.C. Cir. 2002) (holding that an *Accardi* claim is properly dismissed if "any error was harmless."); *Lopez v. FAA*, 318 F.3d 242, 248 (D.C. Cir. 2003); *Jefferson*, 285 F. Supp. 3d at 185; *Edens v. U.S. Postal Serv.*, No. 20-cv-03038, 2025 WL 2779927, at *4 (D.D.C. Sept. 30, 2025). But the Court is aware of little authority that addresses the standard that a plaintiff must meet to demonstrate prejudice for purposes of an *Accardi* claim.

---

[8] The Second Amended Complaint does allege that Plaintiff has provided evidence that would satisfy the preponderance of the evidence standard. 2d Am. Compl. ¶ 56.

The Court concludes that the best course is to adopt the standard applied in *Vanover v. Hantman*. 77 F. Supp. 2d 91 (D.D.C. 1999). After explaining that standard, the Court addresses two considerations that confirm *Vanover*'s persuasive value considering the paucity of legal authority in the field.

i. Legal Standard

In *Vanover*, Judge Flannery confronted the difficulty of assessing prejudice under *Accardi*, observing: "The D.C. Circuit has not clearly stated its understanding of what constitutes a 'harmless error,' merely opining in dicta that 'a procedural error is not made harmless simply because the [plaintiff] appears to have had little chance of success on the merits anyway.'" *Vanover*, 77 F. Supp. 2d at 106 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977)), *aff'd* 38 F. App'x 4 (2002).

To resolve that ambiguity, Judge Flannery applied a test from the Seventh Circuit that asks "whether the particular procedural defect is so substantial and so likely to cause prejudice that no claimant can fairly be required to be subjected to adverse action under such a flawed proceeding." *Id.* (internal quotation marks omitted) (quoting *Shidaker v. Carlin*, 782 F.2d 746, 751 (7th Cir. 1986)). Put another way, the *Vanover* inquiry does not require that a Plaintiff actually demonstrate prejudice to prevail.

Though other district courts have repeatedly cited *Vanover*, none have explicitly adopted its prejudice framework. *See, e.g.*, *CGB v. Wolf*, 464 F. Supp. 3d 174, 226 n.42 (D.D.C. 2020) (citing *Vanover* for the proposition that an *Accardi* claim cannot succeed when any error was non-prejudicial but not addressing how prejudice should be evaluated); *Jefferson*, 285 F. Supp. 3d at 185 (same).

ii. *Vanover* Is Consistent With Subsequent Cases

Adopting *Vanover*'s approach is consistent with subsequent caselaw. For example, in *Lopez v. FAA*, the D.C. Circuit held that a plaintiff's *Accardi* claim failed because he did not indicate "how he was prejudiced by receiving less than thirty days notice" of a decision, even though such notice was required by the agency's procedural rules. 318 F.3d at 248. The Circuit went on to discuss how the plaintiff's remaining allegations of procedural prejudice were cured by the FAA's remedial measures. *Id.* The outcome in *Lopez* is consistent with *Vanover* because the Circuit did not discern any "substantial" procedural defect. *See Vanover*, 77 F. Supp. 2d at 106.

The relationship between *Vanover*'s analysis and the presumption of prejudice when an *Accardi* violation implicates fundamental rights is unclear. But *Vanover* is consistent with cases suggesting that such a presumption has traction in this circuit. *Jefferson v. Harris* provides an illustrative example. There, a plaintiff who had been a "high-level appointee in the Department of Labor" alleged that an internal report which called into question his respect for federal rules and regulations, 285 F. Supp. 3d at 178–79 (D.D.C. 2018), had violated the *Accardi* principle because the investigation did not follow governing agency regulations, *id.* at 184. Ruling on the motion to dismiss, the *Jefferson* court held that the plaintiff could demonstrate prejudice because he had not received notice of the allegations he faced and could not therefore prepare to rebut them or determine whether it was appropriate to retain counsel. *Id.* at 185.

To reach that conclusion, the *Jefferson* court relied upon *Morton v. Ruiz*, where the Supreme Court had emphasized the interest in agencies following their own regulations when those regulations affect individual rights. 415 U.S. 199, 235 (1974); *see also Jefferson*, 285 F. Supp. 3d at 185. *Ruiz* is the basis of the trend to excuse a showing of prejudice when an *Accardi* violation affects fundamental rights. *See Leslie*, 611 F.3d at 179 ("We take additional guidance from

Supreme Court teachings emphasizing the importance of the root of the regulation in question when determining appropriate judicial relief for regulatory violations." (citing *Ruiz*, 415 U.S. at 235)).

And the right to counsel has been recognized as so fundamental as to excuse a showing of prejudice for *Accardi* purposes. *See Aquino*, 53 F.4th at 766 ("[W]e hold that for a regulation to protect a fundamental right, a violation must be a structural error that necessarily makes proceedings fundamentally unfair. Very few rights will fit this extraordinary category. By analogy to *Weaver*, these include the rights to counsel and to an unbiased judge." (citing *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017)). By referencing the effect of the *Accardi* violation on the plaintiff's legal counsel, *Jefferson* may have implicitly suggested that the prejudice requirement can be relaxed when fundamental rights are at stake.

In any event, the conclusion in *Jefferson* is also consistent with *Vanover*. Even if the *Jefferson* court did not consider the fundamental nature of the right to counsel to be conclusive, it certainly seems to qualify as a procedural defect that "is so substantial and so likely to cause prejudice that no claimant can fairly be required to be subjected to adverse action under such a flawed proceeding." *Vanover*, 77 F. Supp. 2d at 106 (internal quotation marks omitted) (quoting *Shidaker*, 782 F.2d at 751). Presumably the infringement of a fundamental right would always satisfy *Vanover*'s prejudice standard, but doing so likely would not require the infringement of a fundamental right.[9]

---

[9] The Court notes that there is some debate over the proper avenue for raising an *Accardi* claim. *See Jefferson*, 285 F. Supp. 3d at 185 (noting that "the caselaw is far from clear as to whether an *Accardi* claim is properly raised as a substantive due-process allegation. Although certain cases suggest that the doctrine has roots in the Due Process Clause, others have held that *Accardi* claims are better understood as arising under the APA or as stand-alone causes of action" and collecting

iii. A More Stringent Standard Is Impractical

*Vanover*'s approach gave effect the D.C. Circuit's suggestion that a low chance of success on the merits did not automatically render an error harmless by excusing an actual showing of prejudice. That approach is persuasive on these facts because it avoids making factual determinations reserved to the Agency.

Under an actual-prejudice standard, Plaintiff would be required to show that the outcome of his adjudication would have been different if the Agency had applied the required burden of proof. Put another way, Plaintiff would have to persuade the Court that he would have prevailed if the Agency had applied a preponderance standard. But the Agency has sole and unreviewable discretion to make that call. 8 U.S.C. § 1154(a)(1)(A)(viii)(I). Making an independent determination would therefore appear to be incongruous with the Agency's statutory authority.

Even if the Court were to make such a determination, the Agency may ultimately reject it. *See Orlandi v. Nolen*, No. 22-1269, 2024 WL 244218, at *1 (D.C. Cir. Jan. 23, 2024) (noting that under *Accardi*, a court remands to the agency when a plaintiff shows a violation of binding procedures and prejudice). And that decision would undisputably be immune from judicial review. *See Castaneira*, 138 F.4th at 549. In that case, the Court's determination of the issue would effectively represent an advisory opinion and be in tension with Article III of the Constitution. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (noting that "federal courts do not issue advisory opinions" and that "under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" (quoting *Am. Legion v. Am. Humanist Assn.*, 139 S. Ct. 2067, 2103 (2019))); *cf. Haaland v. Brackeen*, 143 S. Ct. 1609, 1640 (2023) ("It is a federal court's

---

authority). Absent briefing from either party on the issue, the Court does not see a reason that the source of the doctrine alters its analysis.

judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability.").

But declining to inquire into prejudice for that reason would effectively make judicial review under *Accardi* nugatory in this case. Put another way, the Court would be obligated to accept jurisdiction only to be unable to resolve the merits of the case for other jurisdictional reasons. *Cf. Montilla*, 926 F.2d at 169 ("Adopting the prejudice test requires judicial exploration of petitioners' arguments, and burdens a court with carefully balancing the positives and negatives reflected in petitioner's circumstances to decide whether in hindsight the positives might so outweigh the negatives as to succeed in altering the result reached by the INS."). And the D.C. Circuit concluded that the Agency's action is reviewable under *Accardi* while being aware that the Agency's ultimate determination is unreviewable. There would have been little reason to remand the case if another justiciability issue would ultimately arise.

In sum, applying a more stringent actual-prejudice standard would place the Court between a rock and a hard place.

iv. Application

Having explored the considerations that persuade the Court that applying the *Vanover* standard is appropriate, the Court considers whether Plaintiff has demonstrated that the procedural defect in this case was "so substantial and so likely to cause prejudice that no claimant can fairly be required to be subjected to adverse action under such a flawed proceeding." *Vanover*, 77 F. Supp. 2d at 106 (internal quotation marks omitted) (quoting *Shidaker*, 782 F.2d at 751).

Plaintiff has carried that burden. As discussed above, there is no dispute that the Agency applied a beyond-any-reasonable-doubt standard to his adjudication. *See supra* section III.A.2.b. The Court has concluded that the Agency was required to apply a preponderance standard. *Supra* section III.A.1. The Agency recognizes that the preponderance standard is the most lenient of the "primary standards of proof in the American legal system." Defs.' Mot. at 17. The beyond-any-reasonable-doubt standard is the highest. *See Adorno v. Melvin*, 876 F.3d 917, 922 (7th Cir. 2017) (noting that the trial court properly instructed a jury that reasonable doubt is the highest burden of proof in American law); *Johnson v. Estock*, No. 19-5093, 2023 WL 2955889, at *8 (E.D. Pa. Apr. 14, 2023) ("The reasonable doubt standard is the highest standard of proof known to the law.").

The immense amount of daylight between those burdens makes the Agency's adjudication substantially defective and likely to prejudice Plaintiff. *See Vanover*, 77 F. Supp. 2d at 106; *see also Trinka v. McDonough*, No. 21-2904, 2023 WL 6160053, at *15 (D.D.C. Sept. 21, 2023) (remanding an agency's removal determination because the agency may have applied the wrong burden of proof to its adjudication); *Charlton v. F.C.C.*, 543 F.2d 903, 906 (D.C. Cir. 1976) ("We perceive one error which, all else aside, necessitates administrative reconsideration of the evidence. The crux of the difficulty is the Commission's use of a totally incorrect standard of proof in passing on [the plaintiff's] blameworthiness."); *cf. Jackson v. Virginia*, 443 U.S. 307, 320 n.14 (1979) ("[A] defendant whose guilt was actually proved by overwhelming evidence would be denied due process if the jury was instructed that he could be found guilty on a mere preponderance of the evidence."); *United States v. Smith*, 267 F.3d 1154, 1161 (D.C. Cir. 2001) ("Whereas a reasonable doubt standard is designed to 'exclude as nearly as possible the likelihood of an erroneous judgment' against a criminal defendant, a preponderance standard compels the litigants

to 'share the risk of error in roughly equal fashion.'" (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)); *In re Winship*, 397 U.S. at 371 (Harlan, J., concurring) ("If, for example, the standard of proof for a criminal trial were a preponderance of the evidence rather than proof beyond a reasonable doubt, there would be a smaller risk of factual errors that result in freeing guilty persons, but a far greater risk of factual errors that result in convicting the innocent.").

Accordingly, the Court will grant Plaintiff summary judgment as to his *Accardi* claim, vacate the Agency's denial of his I-130 petition, and remand to the Agency for further proceedings consistent with this opinion. *See See Orlandi*, 2024 WL 244218, at *1; *Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1309 (Fed. Cir. 2021) (remanding an agency's improper penalty determination); *Trinka*, 2023 WL 6160053, at *17 (remanding a removal decision based upon an incorrect evidentiary standard). The Court will also enter a declaratory judgment that the preponderance standard announced in *Chawathe* applies to no-risk determinations under the AWA.

**B. APA Claim**

Plaintiff argues in the alternative that the adoption of the Aytes Memorandum itself violated the APA because the memorandum's evidentiary burden does not reflect reasoned decisionmaking, Pl.'s Mot. at 25, and therefore must be set aside as arbitrary and capricious, *see Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S.Ct. 1891, 1905 (2020). The Court concludes that it lacks subject-matter jurisdiction over this claim.

Both parties insist that the Court must independently interpret the AWA. Plaintiff argues that the Court should not defer to the Agency's interpretation of the AWA as requiring a beyond-any-reasonable-doubt standard. Pl.'s Mot. at 9. The Agency argues that the beyond-any-reasonable-doubt standard is the correct interpretation of the statute. Defs.' Mot. at 14. Parties are

correct that the Court does not defer to agencies on matters of statutory interpretation, *Loper Bright Enters. v. Raimondo*, 144 S.Ct. 2244, 2273 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires."), but their arguments presume that the Agency's choice of burden is reviewable.

Review under the APA is unavailable when another statute precludes judicial review. 5 U.S.C. § 701(a)(1); *Sackett v. EPA*, 566 U.S. 120, 127–28 (2012). The question, then, is whether the AWA triggers the INA's jurisdiction-stripping provisions and therefore precludes judicial review of the Agency's chosen burden of proof. *See Castaneira*, 682 F. Supp. 3d at 26 ("[T]he Court's task . . . is to determine whether the relevant immigration statute makes the determination at issue discretionary and thus outside the Court's jurisdiction to review."). The Court concludes that it does.

The Court begins with the text. *Prime Time Int'l Co. v. Vilsack*, 599 F.3d 678, 683 (D.C. Cir. 2010) ("In interpreting a statute, the court begins with the text . . . ."). As discussed above, the AWA vests the Secretary of Homeland Security with "sole and unreviewable discretion [to] determine[]" whether a Form I-130 petitioner . . . has established that he presents 'no risk' to the intended alien beneficiary." *Castaneira*, 682 F. Supp. 3d at 26 (alterations in original) (quoting 8 U.S.C. § 1154(a)(1)(A)(viii)(I)).

That sweeping grant of discretion is incompatible with a Court's review of the Agency's chosen evidentiary standard because "the Secretary's preferred burden of proof . . . [is] bound up in the Secretary's 'sole and unreviewable discretion.'" *Bourdon*, 940 F.3d at 545 (quoting 8 U.S.C. § 1154(a)(1)(A)); *see also Castaneira*, 682 F. Supp. 3d at 26 (collecting authority); *Nobles*, 177 F.4th at 894 (noting that the "conclusion [] that we lack jurisdiction to review the Secretary's final

decision and his method for reaching it [] accords with the approach taken by six of our sister circuits" and collecting authority).

The Court's conclusion is not in conflict with the D.C. Circuit's holding in this case because the Circuit did not opine on whether the reviewability bar precluded challenges to the evidentiary standard, it only addressed the reviewability of the Agency's failure to adhere to a standard once it had adopted it. *Castaneira*, 138 F.4th at 550 ("Unlike in cases addressing whether the agency is free to set the standard of proof it chooses, the underlying question before us is whether the agency can arbitrarily depart from the standard it chooses to set." (citation omitted) (citing *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018)).

Accordingly, the Court lacks jurisdiction to entertain Plaintiff's challenge to the Agency's adoption of the beyond-any-reasonable-doubt standard pursuant to the INA's bar to judicial review. 8 U.S.C. §1252(a)(2)(B); *see also Nobles*, 177 F.4th at 894 ("[T]he APA's presumption favoring judicial review does not trump the INA's jurisdiction-stripping framework.").[10]

## IV. CONCLUSION

For the reasons stated herein, Plainitff's Motion for Summary Judgment will be granted as to his *Accardi* claim and denied as to his APA claim. Defendants' Cross-Motion for Summary Judgment will be denied and granted correspondingly. The Court will vacate the Agency's

---

[10] That conclusion also disposes of Count V to the extent that Plaintiff claims that he met the preponderance standard. *See* SAC ¶ 75. It also bars any Declaratory Judgment Act relief under Count IV because declaring the meaning of "no risk" and the relevant factors bearing on that determination would necessarily implicate review of the Agency's substantive decisionmaking. *See id.* ¶ 71; *Castaneira*, 682 F. Supp. 3d at 28 (noting that the Declaratory Judgment Act "is not an independent source of federal jurisdiction" (internal quotation marks omitted) (quoting *C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002)). In any event, the parties do not address the issue in their summary judgment motions.

decision on Plaintiff's Form I-130 application and remand to the Agency for further proceedings consistent with this opinion.

A separate order accompanying this Memorandum Opinion shall issue.

Date: 12 November, 2026

Hon. Royce C. Lamberth
United States District Judge